IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 7 |
| THE ATRIUM VIEW, LLC, | * | |
| Debtor | * | |
| | * | |
| THE ATRIUM VIEW, LLC and | * | CASE NO. 1:07-bk-02478MDF |
| STATEWIDE PROPERTIES, LP, | * | |
| Objectants | * | |
| | * | |
| vs. | * | |
| | * | |
| EASTERN SAVINGS BANK, FSB, | * | |
| Respondent | * | |

**OPINION**

**Procedural and Factual History**

Before me are the objections of The Atrium View, LLC ("Debtor") and Statewide Properties, LP ("Statewide") to a claim for a prepayment premium asserted by Eastern Savings Bank, FSB ("Eastern") against the proceeds of an auction sale of certain real estate. The facts that give rise to these objections are as follows.

In May 2006, Debtor executed a note in favor of Eastern in the amount of $250,000.00, secured by a mortgage encumbering commercial property in Shrewsbury Township, Pennsylvania (the "Property"). Interest on the note was fixed at 12.49% for twenty-five (25) years. The note contained a provision requiring Debtor to pay a "prepayment premium" if it prepaid all or part of the debt, voluntarily or otherwise, within three (3) years of the date of the note. In August 2006 Debtor gave a second mortgage against the Property to Fulton Bank ("Fulton") in exchange for a loan of $50,000.00, and in November 2006 Debtor gave a third mortgage to Statewide for a loan of $345,000. After Debtor defaulted on its note Eastern initiated foreclosure proceedings.

On August 10, 2007, Debtor filed the instant bankruptcy case. Debtor's Schedule D lists secured mortgage debt to Eastern for $246,000.00, Fulton for $50,000.00 and Statewide for $345,000.00. On August 29, 2007, Eastern filed a proof of claim in the amount of $312,668.09, including a prepayment premium of $15,814.90.[1] On September 7, 2007, Debtor moved to sell the Property at public auction. Both Eastern and Statewide filed objections to Debtor's motion, which they later withdrew. An order approving the sale of the property through a public auction was entered on October 18, 2007.

At the auction held on October 29, 2007 Statewide submitted the winning bid of $380,000.00, and settlement was held on December 12, 2007. After deducting costs of sale Eastern received $319,737.84, the full amount of the sums owed on its mortgage, including principal, interest, late fees, and costs – except the prepayment premium. As the second lienholder Fulton received $26,252.47, the balance of the proceeds. Because Eastern's entitlement to the prepayment premium was disputed by both Debtor and Statewide, the sum of $15,814.90 – the amount of the claimed premium – was placed in escrow at settlement.[2] The parties have briefed the matter, and it is ready for decision.[3]

---

[1] Fulton subsequently filed proofs of claim totaling $49,949.80. Statewide did not file a proof of claim.

[2] The objections to payment of the prepayment penalty were made orally at a hearing held on November 20, 2007 regarding a motion for relief from the automatic stay filed by Statewide.

[3] I have core jurisdiction to hear this matter pursuant to 28 U.S.C. §157 (b)(2)(A) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Fed. R. Bankr. P. 7052, which is made applicable to contested matters by Fed. R. Bankr. P. 9014.

**Discussion**

The note between Eastern and Debtor contains the following prepayment premium provision:

> If, within thirty-six (36) months from the date of the Note, [Debtor] makes full or partial prepayment, whether voluntary or involuntarily (sic), including, but not limited to, a prepayment resulting from [Eastern's] acceleration of the balance due on the Note, [Eastern] may collect a prepayment premium equal to six (6) months interest at the Note rate, on the principal balance which is being prepaid.

Debtor argues that 11 U.S.C. § 506(b) bars enforcement of the prepayment premium because Eastern has not shown that the penalty is reasonable. Debtor further argues that the escrowed funds should be distributed to Fulton, which holds the second lien.[4] Statewide argues that Eastern waived its entitlement to the payment of a prepayment premium when it consented to the sale. Alternatively, Statewide argues that even if Eastern did not waive its right to claim a prepayment premium, under 11 U.S.C. §510(c)(1), Eastern's claim should be equitably subordinated to Statewide's third lien position. Statewide also argues that Fulton, the second-position lienholder, agreed to accept the $26,252.47 it received at settlement in full satisfaction of its claim and, therefore, Statewide, as the third lienholder, should receive the escrowed funds.[5]

A creditor must meet two criteria to enforce a demand for a prepayment premium. First, the prepayment premium must be enforceable under state law. *In re AE Hotel Venture*, 321 B.R. 209, 217 (Bankr. N.D. Ill. 2005). Second, as required by § 506(b), the premium must be reasonable and it must have been provided for under the loan agreement. *Id.*

---

[4]Debtor's principals have an interest in seeing that the proceeds are paid to Fulton because they have executed personal guarantees on the Fulton loan.

[5]Fulton did not appear in this matter.

3

### a. *Enforcement under State Law*

Under Pennsylvania law, when a mortgage note is silent as to whether the obligation may be repaid before the end of the term, the law presumes that the debt may be repaid without penalty. *Mahoney v. Furches*, 503 Pa. 60, 65, 468 A.2d 458, 461 (1983) *cited in Citicorp Mortgage, Inc. v. Morrisville Hampton Village Realty Limited Partnership*, 443 Pa. Super. 595, 599, 662 A.2d 1120, 1122 (Pa. Super. 1995). In a commercial context, if the parties manifest an intent in the instrument to provide for a prepayment fee and the fee serves as measure of liquidated damages, payment of the fee will be enforced. *Citicorp Mortgage*, 443 Pa. Super. at 600, 662 A.2d at 1122. The criteria that a court must examine to determine whether a prepayment premium is permitted under state law are similar to factors examined by bankruptcy courts applying § 506(b). Therefore, having determined that Pennsylvania law does not bar the enforcement of prepayment penalties, I turn to § 506(b) to consider whether the fee should be allowed in the case at bar.

### b. *Application of § 506 (b)*

Section 506(b) provides that an oversecured creditor "shall be allowed . . . interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506 (b). Post petition interest on a claim may be recovered without qualification, but fees, costs, and charges are allowed only if they are reasonable and are authorized by the contract or agreement under which the claim arose. *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S. Ct. 1026 (1989). In the within case, it is undisputed that Eastern is an oversecured creditor. But while the parties have stipulated that the

4

note provides for the imposition of a prepayment penalty, Debtor asserts that the fee is not reasonable.

The purpose of a prepayment premium is ensure that the lender obtains the benefit of the bargain by protecting it against falling interest rates. *In re Duralite Truck Body & Container Corp.* 153 B.R. 708, 711 (Bankr. D. Md. 1993). See *A.J. Lane and Co., Inc.* 113 B.R. 821, 823 (Bankr. D. Mass. 1990)); *In re Kroh Bros. Development Co.*, 88 B.R. 997, 1001-2 (Bankr. W.D. Mo. 1988). A prepayment premium is a type of "charge" and, thus, must be "reasonable." *In re Holmes*, 330 B.R. 317 (Bankr. M.D. Ga. 2005) (citing *In re AE Hotel Venture*, 321 B.R. 209, 217 (Bankr. N.D. Ill. 2005); *Foothill Capital Corp. v. Official Unsecured Creditors' Committee of Midcom Communications, Inc.*, 246 B.R. 296, 306 (E.D. Mich. 2000); *Continental Securities Corp. v. Shenandoah Nursing Home Partnership*, 193 B.R. 769, 775 (W.D. Va.) *aff'd* 104 F.3d 359 (4th Cir. 1996). The reasonableness of a prepayment penalty is determined by how accurately it predicts actual losses that will be incurred by the creditor if the obligation is paid before the end of the term. *See e.g.*, *In re Imperial Coronado Partners, Ltd.*, 96 B.R. 997, 1001 (B.A.P. 9th Cir. 1989); *In re Vanderveer Estates Holdings, Inc.*, 238 B.R. 122, 133 (Bankr. E.D. N.Y. 2002); *In re Schwegmann Giant Supermarket Partnership*, 264 B.R. 823, 828 (Bankr. E.D. La. 2001); *In re Duralite Truck Body & Container Corp.*, 153 B.R. 708, 714-15 (Bankr. D. Md. 1993); *In re Outdoor Sports Headquarters, Inc.*, 161 B.R. 414 (Bankr. S.D. Ohio 1993); *In re Morse Tool, Inc.* 87 B.R. 745, 750 (Bankr. D. Mass. 1988); *In re Kroh Bros. Development Co.* at 1001-2; *In re Skyler Ridge*, 80 B.R. 500 (Bankr. C.D. Cal. 1987); *In re American Metals Corp.*, 31 B.R. 229, 237 (Bankr. D. Kan. 1983). It is the creditor's burden to demonstrate that the prepayment premium is reasonable. *In re Schaumburg Hotel Owner Ltd. Partnership*, 97 B.R.

943, 950 (Bankr. N.D. Ill. 1989); *Noon v. Fremont Financial (In re Lappin Electric Co., Inc.)* 245 B.R. 326, 329 (Bankr. E.D. Wis. 2000); *In re Schwegmann Giant Super Markets*, 287 B.R. 649, 654 (E.D. La. 2002); *In re Holmes*, 330 B.R. at 322.

> A prepayment charge formula must effectively estimate actual damages, otherwise, the charges may operate as either a penalty on the debtor or a windfall to a lender, at the expense of other creditors of the bankruptcy estate. Only a prepayment charge formula which [sic] reasonably measures actual damages will be respected under 506(b).

*In re Duralite Truck Body & Container Corp.* at 714 (internal citations omitted).

> The damage formula is simple and well established. It is the difference in the interest yield between the contract rate and the market rate at the time of prepayment, projected over the term of the loan and then discounted to arrive at present value. Any prepayment charge should be wholly or largely dependent upon such a calculation.

*A.J. Lane and Co., Inc.* at 829. See also *In re Kroh Bros. Dev. Co.* at 1000-01; *In re Skyler Ridge* at 505. If a provision makes no attempt to approximate actual damages, the provision is unreasonable. *In re Schwegmann Giant Super Markets* at 656-57.

In the instant case, Eastern provided no evidence that the prepayment premium approximates reasonably predicted actual losses. A flat fee that is the same regardless of how many months interest is lost and that is unrelated to the market interest rate clearly is not based on a forecast of actual damages. Eastern's only justification in support of the provision is that "[i]n the current residential subprime mortgage industry, a typical prepayment premium is six months' interest." (Respondent's Brief at 5). While a six-month prepayment penalty may be inserted routinely in mortgage notes, that does not mean this provision passes muster in the

6

bankruptcy context. Eastern has not shown that the prepayment premium is reasonable, and, therefore, it is disallowed under §506(b).[6]

   c.   *Distribution of the escrowed funds*

The remaining issue to be decided by the Court is which of the remaining lienholders are entitled to receive the escrowed funds. Eastern has already received distributions equal to its claim and, as discussed above, is not entitled to the prepayment premium. Fulton, the second mortgage holder, filed proofs of claim totaling $49,949.80. Following the sale of the property, Fulton received $26,252.47 in payment of its lien. Debtor argues that Fulton, as the second-position lienholder, should receive the escrowed funds because its claim was not satisfied in full at settlement. Statewide argues that Fulton accepted the distribution of $26,252.47 in full satisfaction of its second mortgage claim and should not receive any further payments. Statewide, however, provides no support for its claim that Fulton waived its claim to payment of the balance due. While the settlement statement executed at closing by Statewide and Debtor lists the distribution to Fulton as "payoff of second mortgage loan," this notation by the settlement agent does not constitute an admission by Fulton that it agreed to accept this lesser amount as payment in full. Accordingly, as the second lienholder with the balance of its claim being in excess of the $15, 814.90 being held in escrow, Fulton is entitled to receive the entire fund.

---

[6]Statewide argues that Eastern consented to the sale through the withdrawal of its objection and, therefore, is not entitled to a prepayment premium or, in the alternative, that Eastern's interest in the prepayment premium should be equitably subordinated under §510(c)(1). Because I have determined that Eastern has failed to meet its burden to justify the reasonablensess of the prepayment penalty, I do not reach the merits of Statewide's arguments.

**Conclusion**

      Eastern failed to meet its burden to show that the prepayment premium provided for in its note with Debtor is reasonable under §506(b). Therefore, the prepayment premium is disallowed. Eastern has received full payment of its claim. The second lienholder, Fulton, has not been paid in full and, therefore, the escrowed funds should be released to Fulton. An appropriate order will follow.

By the Court,

*/s/ Mary D. France*
Bankruptcy Judge

**Date: December 24, 2008**

*This document is electronically signed and filed on the same date.*

8